1  LATHAM & WATKINS LLP
      Daniel Scott Schecter (Cal. Bar No. 171472)  FILED
2     Wendy P. Harper (Cal. Bar No. 223690)
   633 West Fifth Street, Suite 4000               08 MAY 27  AM II: 10
3  Los Angeles, California  90071-2007
   Telephone:  (213) 485-1234                      CLERK, U.S. DISTRICT COURT
4  Facsimile:  (213) 891-8763                      SOUTHERN DISTRICT OF CALIFORNIA
   Email:  daniel.schecter@lw.com;
5          wendy.harper@lw.com                     BY: _____  DEPUTY

6  LATHAM & WATKINS LLP
      Kenneth M. Fitzgerald (Cal. Bar No. 142505)
7  600 West Broadway, Suite 1800
   San Diego, CA  92101-3375
8  Telephone:  (619) 236-1234
   Facsimile:  (619) 696-7419                      '08 CV 0929 W AJB
9  Email:  kenneth.fitzgerald@lw.com

10 *Attorneys for Plaintiffs*
   The Revolution FMO LLC, Mark Lindsey, and Ty
11 J. Young

12
                 UNITED STATES DISTRICT COURT
13
               SOUTHERN DISTRICT OF CALIFORNIA
14

| | |
|---|---|
| 15  THE REVOLUTION FMO LLC, MARK LINDSEY, TY J. YOUNG, | CASE NO. |
| 16                    Plaintiffs, | **COMPLAINT FOR:** |
| 17         v. | **(1) COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a));** |
| 18  ASSET MARKETING SYSTEMS INSURANCE SERVICES, LLC, | **(2) TRADEMARK INFRINGEMENT / FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a));** |
| 19                    Defendant. | |
| 20  | **(3) TRADEMARK INFRINGEMENT (Cal. Bus. Prof. Code § 14247 and California common law)** |
| 21  | **(4) DEFAMATION;** |
| 22  | **(5) TRADE LIBEL;** |
| 23  | **(6) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;** |
| 24  | **(7) UNFAIR COMPETITION (Cal. Bus. & Prof. Code § 17200, *et seq.* and California common law); and** |

ORIGINAL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

**(8) DECLARATORY RELIEF**
**(Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202).**

**DEMAND FOR JURY TRIAL**

Plaintiffs The Revolution FMO LLC ("Revolution"), Mark Lindsey, and Ty. J. Young (collectively, "Plaintiffs") allege for their complaint against Defendant Asset Marketing Systems Insurance Services, LLC ("AMS") as follows:

## SUMMARY OF CLAIMS

1.      Plaintiffs bring this action in order to stop AMS' unlawful and transparent attempts to maintain their market position, through conduct calculated to hinder competition, interfere with Plaintiffs' business interests, and injure Plaintiffs' reputations in the insurance industry. Rather than competing fairly in the marketplace, AMS has resorted to a smear campaign against Plaintiffs, and the assertion of specious claims of intellectual property infringement and contractual breach against Plaintiffs. Indeed, AMS has attempted to disrupt Plaintiffs' business and impair their reputations, by publishing false and defamatory comments to the large insurance carriers who are key business partners for both Plaintiffs and AMS.

2.      As founders and principals of Revolution, Mark Lindsey and Ty Young are the creators and developers of a highly successful training program for individual producers and agents in the insurance industry, *Program 2 Premium* (the "P2P Program"). Given the success of their P2P Program and their desire to expand their business, in early 2008, Lindsey and Young decided to launch their own marketing entity, Revolution. Because of their prior relationship with AMS, one of the largest marketing entities in the insurance industry, Lindsey and Young anticipated that their small, newly-formed entity could align or partner with AMS. Instead of negotiating an alliance in good faith or simply allowing Revolution to compete in the market, AMS has attempted to use its significant resources and greater access to key insurance carriers and producers to prevent Revolution from growing into a significant competitor.

3.     Accordingly, Plaintiffs bring this action to protect their valuable intellectual property and to enforce their basic rights under California law.

### JURISDICTION AND VENUE

4.     This is a civil action for copyright infringement under 17 U.S.C. § 501(a); trademark infringement and false designation of origin under 15 U.S.C. § 1125(a) and California statutory and common law; defamation, trade libel, and intentional interference with prospective economic advantage under California law; unfair competition under California Business and Professions Code § 17200 and California common law; and declaratory relief under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202.

5.     This Court has subject matter jurisdiction over Plaintiffs' claims for relief for violation of the federal copyright and trademark statutes pursuant to 15 U.S.C. §§ 1121 and 1125(a), (c); 17 U.S.C. § 501; and 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over Plaintiffs' state and common law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims are joined with substantial and related claims under the federal copyright and trademark laws.

6.     Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1391(b) and 28 U.S.C. § 1400(a), because a substantial part of the events giving rise to the claims occurred in this District, including, *inter alia*, that AMS is using and infringing on Plaintiffs' copyright and trademark rights in this District, and that AMS is causing injury to Plaintiffs in this District which is the principal place of business of AMS.

### THE PARTIES

7.     Defendant AMS is a Delaware limited liability company, with its principal place of business at 9715 Business Park Avenue, San Diego, California 92121. AMS is a Field Marketing Organization ("FMO") which is in the business of providing marketing products, services, support, and programs to a network of licensed insurance producers who sell life insurance, fixed annuities and fixed index annuities, and long-term care insurance through AMS insurance carriers with whom AMS contracts.

1     8.     Plaintiff Revolution is a California limited liability company, with its

2 principal place of business at 22736 Vanowen Street, Suite 300, West Hills, California 91307.

3 Revolution also operates as an FMO with a network of licensed insurance producers who sell

4 insurance, fixed annuities and fixed index annuities, and long-term care insurance through

5 Revolution's insurance carriers with whom Revolution contracts.

6     9.     Plaintiff Mark Lindsey is an individual residing in California. Lindsey is a

7 founder and principal of Revolution.

8     10.     Plaintiff Ty J. Young is an individual residing in Georgia. Young is a

9 founder and principal of Revolution.

10     **GENERAL ALLEGATIONS**

11     **A.     Lindsey and Young's Creation and Development of the P2P Program.**

12     11.     In or about early 2006, Mark Lindsey and Ty Young conceived of and

13 developed the P2P Program, otherwise known as *Programs 2 Premium*. As successful producers

14 in the insurance industry, Lindsey and Young hoped to develop a simple training system for

15 producers, which would assist them in achieving greater success in their businesses.

16     12.     In developing the P2P Program, Lindsey and Young authored three

17 manuals, the Basic Training Manual, P2P Boot Camp, and Special Ops, among other materials

18 and presentations, to be used at P2P seminars.

19     13.     Industry standards normally require licensed insurance agents to contract

20 with an insurance carrier through a marketing entity or FMO, like AMS. Despite entering into

21 such FMO contracts with AMS, all producers and agents remain independent and are *not*

22 employed by AMS. As producers, Lindsey and Young previously had entered into FMO

23 contracts with AMS. However, Lindsey and Young were at no time employees of AMS.

24     14.     After development of the concept and preparation of outlines and manuals

25 to be used in connection with the P2P Program, on or about February 3, 2006, Lindsey and

26 Young presented a proposal concerning their new program to AMS.

27     15.     At this meeting, Lindsey and Young presented an overview of the program

28 to Michael Midlam and other executives and principals of AMS. Lindsey and Young proposed

1   to develop and run a training program that could be offered to producers and agents throughout

2   the country.  AMS approved the program, and shortly thereafter, began to encourage AMS'

3   producers and agents to attend the program.

4          16.    In connection with this arrangement, and in exchange for Lindsey and

5   Young conducting the P2P seminars around the country, AMS agreed to pay for all marketing

6   and other expenses for the seminars.  AMS also agreed to pay Lindsey and Young .50% of the

7   increased premiums generated by the attendees of the P2P Program.

8          17.    Also in connection with this arrangement, AMS requested and Lindsey

9   and Young agreed to enter into a non-disclosure agreement.  The Non-Disclosure Agreement

10  between the parties was entered into on June 22, 2006 and provides that California law governs

11  any dispute concerning the agreement.

12         18.    The P2P Program is the only training program of its kind in the insurance

13  industry and proved to be very successful.  Lindsey and Young became *de facto* leaders in

14  training AMS producers and agents.

15         19.    AMS continued to send its agents and producers to the P2P seminars

16  through February 2008, and to pay for all marketing and other expenses in connection with

17  Lindsey and Young conducting the seminars.

18         20.    During this time period, both AMS and its Compliance Department were

19  extremely complimentary of the P2P Program and at no time raised any serious issues or

20  concerns regarding the P2P Program's compliance with applicable regulations or AMS' internal

21  procedures.

22         21.    AMS paid Lindsey and Young approximately $162,500 for their time and

23  expenses in connection with conducting the P2P seminars.  AMS never paid Lindsey and Young

24  the agreed-upon payments for P2P attendees' increased production.

25         22.    In agreeing to conduct the P2P Program for AMS' producers and agents,

26  Lindsey and Young at no time intended or agreed to sell either ownership or licensing rights for

27  the P2P Program to AMS.

28

23.     In addition, Lindsey and Young were neither employees of AMS, nor did they operate under any written agreement which granted AMS any ownership interest in the P2P program, as a "work for hire" or otherwise.

**B.      Lindsey and Young Launch Revolution as a Competing Marketing Entity and FMO.**

24.     Because of the tremendous success of the P2P Program, in or about July 2007, Lindsey and Young decided to launch their own training company, Revolution.

25.     In order to expand the breadth of their business, in or about February 2008, Lindsey and Young considered the possibility of having Revolution operate as an FMO as well.

26.     Hoping to maintain a continuing relationship with AMS and in an effort to remain entirely above board about their plans, Lindsey and Young informed AMS of their intention to have Revolution operate as an FMO shortly after making their decision.  Around this same time, Lindsey and Young prepared a presentation and proposal for a strategic partnership or alliance between AMS and Revolution.  Indeed, Young and Lindsey initially envisioned that Revolution would operate as an FMO with some relationship with AMS, such that Revolution would be under the AMS umbrella.

27.     In February 2008, the parties began negotiating the terms of such a relationship, and the parties reached an oral agreement on or about February 29, 2008.  In early March 2008, Lindsey and Young provided AMS with a draft Letter Agreement which set forth the agreed-upon terms.

**C.      Almost Immediately Following Lindsey and Young's Announcement of Their Intention to Form a Competing Entity, AMS Begins Obstructionist, Unlawful, and Bad Faith Conduct.**

28.     On or about March 18, 2008, Wayne Talluer of AMS provided a revised draft of the letter agreement to Lindsey and Young which substantially altered the previously-negotiated terms.  In addition to changes made to other material terms, and in stark contrast to all prior conversations and understandings between the parties, AMS' draft agreement wrongly provided that "AMS, in its sole and exclusive capacity, reserves and retains all ownership

1 | interests in, and copyright[] rights to" the P2P Program and all related training materials. As part

2 | of the draft agreement, AMS also purported to own all rights to the "*Programs to Premium*™"

3 | mark and to transfer those rights back to Lindsey and Young.

4 | 29. AMS' proposed changes to the agreement were directly contrary to

5 | Lindsey's and Young's ownership rights in the P2P Program and its service mark "*Programs 2*

6 | *Premium*," and all prior discussions and negotiations with AMS.

7 | 30. In response, Lindsey and Young both discussed their disappointment and

8 | disagreement with the terms of the revised draft and informed Michael Midlam, President of

9 | AMS, that they were not willing to enter into an agreement on these terms.

10 | 31. Then, on or about March 20, before AMS notified Lindsey and Young that

11 | it was no longer interested in continuing negotiations for a strategic alliance, the offices of

12 | Lindsey and Young began to receive numerous phone calls from producers in the insurance

13 | industry. Each of these producers informed Lindsey and Young that they had been contacted by

14 | AMS and its agents.

15 | 32. Plaintiffs are informed and believe, and on that basis allege, that during

16 | these contacts with producers, AMS and its agents engaged in a smear campaign of false,

17 | negative statements regarding Plaintiffs and their business practices, including statements

18 | regarding Plaintiffs' honesty, ethics and competency. The nature of these statements evidenced

19 | AMS' desire to discredit and harm the business reputations of Plaintiffs and to convince its

20 | producers and agents not to leave AMS in favor of Revolution.

21 | 33. In addition to the above contacts with producers, on March 21, 2008,

22 | Michael Midlam of AMS sent a letter to Lindsey and Young, copying ING, Allianz Life

23 | Insurance Co. of North America, American Equity, and Old Mutual (the "March 21 Letter").

24 | These entities are four of the largest insurance carriers with which Plaintiffs do business.

25 | a. In the March 21 Letter, AMS claimed that "during routine audits

26 | of your trainings and teleconferences," the AMS Compliance Department "identified

27 | several regulatory deficiencies, misrepresentations, unfair product comparisons, and

28 | unethical business practice recommendations in your presentations." The letter also

1    threatened that if Lindsey and Young attempt to continue providing P2P training, AMS

2    will notify each state's Department of Insurance of the alleged non-compliant

3    activities.

4              b.        In addition to publishing the March 21 Letter to four of the biggest

5    insurance carriers, AMS also asserted in the March 21 Letter that AMS issued "a formal

6    correspondence to all program participants in the latter part of 2007 cautioning them with

7    regard to unethical business practices" which had been included in the P2P Program.

8    AMS has never provided a copy of this letter to Revolution, Lindsey or Young and has

9    never informed them of the alleged violations and unethical business practices or a need

10    to "caution" P2P participants. Significantly, AMS did, however, continue to promote and

11    drive producers to a P2P Program seminar in February 2008, an action in direct conflict

12    with the allegations in the March 21 Letter.

13              c.        The March 21 Letter and its allegations were blatantly false and

14    defamatory. Among other things, while the Letter claims Lindsey and Young were made

15    aware of the alleged violations and deficiencies, AMS never notified Lindsey and Young

16    of any specific "regulatory deficiencies, misrepresentations, unfair product comparisons,

17    or unethical business practice recommendations" in the P2P Program. These alleged (and

18    unspecified) regulatory violations were raised for the first time in the March 21 Letter,

19    and *only after* Lindsey and Young had informed AMS of its intention to launch their own

20    competing marketing entity.

21              d.        Further, while the March 21 Letter purports to attach a list of the

22    "frequently observed violations," the attachment includes only quotations from various

23    regulatory provisions. To date, AMS has not provided and has refused to provide a list of

24    the specific violations discovered by AMS' purported audit of the P2P Program or the

25    violations that existed in the P2P training materials at the time of the March 21 letter.

26        34.        Notably, AMS and its training department are responsible for printing and

27    assembling the Works and presentation materials authored by Lindsey and Young for

28    distribution at the P2P Program seminars attended by AMS' agents and producers. It is thus

1  entirely inaccurate to suggest that Lindsey and Young failed to provide the training materials to

2  AMS prior to distribution.  Further, if AMS had identified violations which prompted a

3  cautionary letter to all P2P participants *in the latter part of 2007*, best business practices

4  similarly would have required AMS to correct all materials.  Nevertheless, AMS printed and

5  distributed the P2P training manuals for Lindsey and Young in February 2008.

6              35.     AMS' contacts with producers, agents and insurance carriers in the

7  industry described above occurred while AMS and Lindsey and Young were still engaged in

8  negotiations for a strategic alliance.  Lindsey and Young interpreted the above actions as AMS'

9  withdrawal from the negotiations.  Because AMS evidenced an obvious intent to prevent the

10  success of Plaintiffs, Lindsey and Young formally requested on or about March 26, 2008 that

11  they be released from their FMO contracts with AMS.

12              36.     On or about April 1, 2008, Lindsey and Young publicly launched

13  Revolution as an FMO.  In starting Revolution, Plaintiffs at no time solicited any of AMS'

14  current producers, agents or employees.  While AMS' producers and agents have left AMS to

15  join Revolution, they did so without being solicited, directly or indirectly, by Lindsey or Young,

16  and joined Revolution only after securing a formal release from AMS.

17      **D.    Following the Launch of Revolution, AMS' Unlawful and Bad Faith Conduct
            Continues.**

18

19              37.     Plaintiffs are informed and believe, and on this basis allege, that since the

20  launch of Revolution, AMS has continued and is continuing to engage in unlawful, unfair, and

21  bad faith conduct in an effort to harm Plaintiffs and their business reputations.

22              38.     Plaintiffs are informed and believe, and on this basis allege, that AMS and

23  its representatives have continued to contact insurance carriers, producers and agents throughout

24  the insurance industry and disparage the business practices of Plaintiffs and the quality of the

25  P2P Program and the services offered by Plaintiffs.  For example, Michael Midlam has contacted

26  various insurance carriers and in private meetings, attempted to persuade these carriers to

27  terminate Lindsey and Young through making false statements regarding Plaintiffs' honesty,

28  ethics and competency and the P2P Program's compliance with applicable regulations.

1           39.     In addition, Plaintiffs are informed and believe, and on this basis allege

2 that, Jay Ackerstein of AMS has instructed Madison Avenue Securities, the broker-dealer used

3 by AMS, to terminate its agreement with any agent that decides to leave AMS and join

4 Revolution. Madison Avenue Securities has also threatened agents that if they leave AMS for

5 Revolution, their agent agreement will be terminated, in spite of the fact that it is legally

6 precluded from taking such action without cause.

7           40.     Plaintiffs have also wrongly asserted that the Non-Disclosure Agreement

8 prohibits Plaintiffs from directly or indirectly soliciting or diverting any agent, producer or

9 person under contract with AMS for a period of five years after termination of the Agreement.

10 These provisions of the Non-Disclosure Agreement are void and unenforceable under California

11 law.

12           41.     Further, Plaintiffs are informed and believe, and on this basis allege that,

13 AMS has asserted improperly and in bad faith that AMS created and produced the P2P Program

14 and all related training materials. Without the permission or consent of Plaintiffs, AMS has

15 continued to use the P2P Program, including related training materials, manuals and

16 presentations which were authored by Lindsey and Young. Further, without the permission or

17 consent of Plaintiffs, AMS has improperly placed a notice on materials and manuals for the P2P

18 Program indicating its ownership of the copyright rights to the materials.

19           42.     Finally, without the consent or permission of Plaintiffs, AMS has

20 continued to use the title *"Programs to Premium"* in its business and training programs, and has

21 wrongfully attempted to register the *"Programs to Premium*™*"* mark with the United States

22 Patent and Trademark Office. Plaintiffs have also improperly included a notice on P2P materials

23 indicating its ownership of the mark *"Programs to Premium."*

24           43.     In taking the above-described actions, AMS is attempting unlawfully to

25 prevent Plaintiffs' from competing fairly in its market and to misappropriate the favorable

26 reputation and valuable goodwill which Lindsey and Young have established over the past two

27 years in conducting the P2P Program. Lindsey and Young intend to protest AMS' wrongful

28

1    activities and are forced in this action to enjoin and seek damages for AMS' blatant infringement

2    of their intellectual property rights.

3         44.    Plaintiffs are informed and believe, and on that basis allege, that the

4    wrongful actions detailed above are continuing, are intentional and in bad faith, and are designed

5    to harm the business and reputations of Plaintiffs.

6                          **FIRST CLAIM FOR RELIEF**

7                          **COPYRIGHT INFRINGEMENT**

8                             **(17 U.S.C. § 501)**

9         45.    Plaintiffs reallege and incorporate by reference the allegations in

10    paragraphs 1 through 44, as set forth herein.

11        46.    Plaintiffs are the authors and exclusive owners of the P2P Program and all

12    related materials, manuals, and presentations.

13        47.    Plaintiffs hold a valid United States copyright in the P2P Program and all

14    related materials, including three manuals used in connection with the P2P Program:  the Basic

15    Training Manual, the P2P Boot Camp manual, and the Special Ops manual (the "Works").

16        48.    Plaintiffs have complied in all respects with the provisions of the

17    Copyright Act and filed applications to register the Works with the United State Copyright

18    Office.

19        49.    Plaintiffs have at no time authorized or licensed AMS to use the Works or

20    any portion of the P2P Program and related materials.

21        50.    Plaintiffs are informed and believe, and on that basis allege, that AMS has

22    copied, distributed, and made use of and continues to make use of the Works (or substantially

23    similar materials) as well as other P2P Program materials in connection with AMS' business,

24    without the consent or permission of Plaintiffs.

25        51.    Plaintiffs are informed and believe, and on that basis allege, that AMS has

26    copied and made use of and continues to make use of both the individual protectable expressive

27    elements of the Works and the expressive manner in which Lindsey and Young selected,

28    arranged, and combined the protectable and non-protectable elements of the Works.

52.   AMS unquestionably had access to the Works and other P2P materials by virtue of Lindsey and Young's prior relationship with AMS and their conducting seminars for AMS' producers and agents.

53.   In addition, Plaintiffs are informed and believe, and on that basis allege, that AMS has wrongfully placed a notice on the Works indicating AMS' ownership of the copyright rights to the Works. AMS has improperly copied, distributed, and disseminated the Works with AMS' notices in violation of Plaintiffs' copyright rights.

54.   AMS' past and current use of the Works and other P2P Program materials (or substantially similar materials) constitutes copyright infringement in violation of 17 U.S.C. § 501(a).

55.   Plaintiffs are informed and believe, and on that basis allege, that AMS has derived and continues to derive benefits, financial and otherwise, from its unauthorized use of the Works and other P2P Program materials.

56.   Plaintiffs are informed and believe, and on this basis allege, that at all relevant times, AMS has engaged and continues to engage in the business of knowingly and systematically participating in, facilitating, materially contributing to, and encouraging the above-described, unauthorized production and distribution of the Works.

57.   The foregoing acts of infringement by AMS were willful, intentional, and purposeful, in disregard of and with indifference to Plaintiffs' rights.

58.   As a direct and proximate result of AMS' infringement of Plaintiffs' copyright, and exclusive rights under copyright, Plaintiffs are entitled to recover AMS' profits made from their wrongful acts pursuant to 17 U.S.C. § 504 along with any and all profits lost by Plaintiffs due to AMS' conduct.

59.   Alternatively, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504, for Defendants' willful infringement, or for such other amounts as may be proper pursuant to 17 U.S.C. §§ 504 and 505.

1    60.   AMS' conduct is continuing and constitutes an ongoing threat to

2 Plaintiffs. Unless AMS is restrained and enjoined from engaging in the infringing conduct

3 described herein, Plaintiffs will suffer irreparable injury.

4    61.   Plaintiffs are entitled to impoundment and destruction of AMS' infringing

5 materials pursuant to 17 U.S.C. § 503.

6    **SECOND CLAIM FOR RELIEF**

7    **TRADEMARK INFRINGEMENT / FALSE DESIGNATION OF ORIGIN**

8    **(15 U.S.C. § 1125(a))**

9    62.   Plaintiffs reallege and incorporate by reference the allegations in

10 paragraphs 1 through 61, as set forth herein.

11    63.   Since 2006, Plaintiffs have extensively and continuously used the mark

12 *Programs 2 Premium* in conducting the P2P Program seminars.

13    64.   Plaintiffs own valuable rights, and have developed significant goodwill, in

14 its name and mark *Programs 2 Premium*.

15    65.   Plaintiffs are the exclusive owners and senior users of the *Programs 2*

16 *Premium* name and mark in connection with the provision of training programs and other

17 services to producers and agents in the insurance industry. Beginning on a date prior to AMS'

18 activities complained of herein, Plaintiffs' name and mark *Programs 2 Premium* became

19 distinctive and acquired a secondary meaning within the insurance industry community. The

20 *Programs 2 Premium* mark is understood by the insurance industry community to be authorized,

21 licensed, affiliated with, and/or endorsed by Plaintiffs.

22    66.   Without the permission or consent of Plaintiffs, and long after Plaintiffs

23 had established valuable goodwill in connection with their training and services identified by

24 Plaintiffs' service mark, AMS commenced to use, in interstate commerce and commerce

25 substantially affecting interstate commerce, the mark *Programs to Premium*, in connection with

26 its competing business and services in the insurance industry.

27    67.   The name *Programs to Premium* used by AMS is a colorable imitation

28 and confusingly similar to Plaintiffs' mark *Programs 2 Premium*.

68.    In selecting and using the mark *Programs to Premium* as a service mark, AMS is acting with the purpose of taking the benefit of the favorable reputation and valuable goodwill which Plaintiffs have established in their service mark, and causing the services and business of AMS to be palmed off as made, authorized, sponsored by, endorsed by or otherwise connected with Plaintiffs.

69.    AMS' activities complained of herein are likely to cause confusion, to cause mistake and to deceive members of the insurance industry community as to the source, nature and quality of the program and services marketed by AMS.

70.    Without the knowledge or consent of Plaintiffs, AMS caused an application to be filed with the United States Patent and Trademark Office and has improperly included a notice on P2P Program materials indicating its ownership of the mark *Programs to Premium*.

71.    AMS' registration of the *Programs to Premium* mark renders it impossible for Plaintiffs to obtain a registration from the United States Patent and Trademark Office for marks which are variants or derivatives of the *Programs to Premium* mark.

72.    Plaintiffs intend to protest AMS' activities complained of herein, but AMS is continuing such activity despite the protest and due notice of Plaintiffs' rights.

73.    AMS has intentionally and wrongfully infringed the *Programs 2 Premium* mark through adoption and use of the confusingly similar name and mark *Programs to Premium* in providing services in direct competition with such services of Plaintiffs. AMS' actions constitute a willful violation of the Lanham Act, including, but not limited to Sections 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

74.    Accordingly, Plaintiffs are entitled to recover AMS' profits and reasonable royalties together with Plaintiffs' damages, each of which may be trebled, as well as costs of the action and reasonable attorneys' fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117.

75.    AMS' intentional and willful activities have caused, and will continue to cause, irreparable harm to Plaintiffs for which Plaintiffs have no adequate remedy at law, in that:

1   (i) Plaintiffs' mark is unique and a valuable property right central to Plaintiffs' business and its

2   market value cannot be readily determined; (ii) AMS' infringement constitutes an interference

3   with Plaintiffs' goodwill and business and will substantially harm Plaintiffs' reputation; and (iii)

4   AMS' wrongful conduct, and the damages resulting to Plaintiffs, are continuing.  Accordingly,

5   Plaintiffs are entitled to preliminary and permanent injunctive relief.

6           76.     Plaintiffs are informed and believe, and on that basis allege, that AMS'

7   conduct as alleged herein was intentional and malicious.  Plaintiffs therefore are entitled to an

8   award of punitive damages against AMS, in an amount sufficient to discourage and deter such

9   conduct in the future and to make an example of AMS.

10                     **THIRD CLAIM FOR RELIEF**

11                     **TRADEMARK DILUTION**

12       **(Cal. Bus. Prof. Code § 14247 and California Common Law)**

13           77.    Plaintiffs reallege and incorporate by reference the allegations in

14   paragraphs 1 through 76, as set forth herein.

15           78.     Since 2006, Plaintiffs have extensively and continuously used the mark

16   *Programs 2 Premium* in conducting the P2P Program seminars in California and across the

17   country.

18           79.     Plaintiffs own valuable rights, and have developed significant goodwill, in

19   its name and mark *Programs 2 Premium*.

20           80.     Plaintiffs are the exclusive owners and senior users of the *Programs 2*

21   *Premium* name and mark in connection with the provision of training programs and other

22   services to producers and agents in the insurance industry in California.

23           81.     Beginning on a date prior to AMS' activities complained of herein,

24   Plaintiffs' name and mark *Programs 2 Premium* became famous and distinctive and acquired a

25   secondary meaning within the insurance industry community in California.  The *Programs 2*

26   *Premium* mark is understood by the insurance industry community in California to be authorized,

27   licensed, affiliated with, and/or endorsed by Plaintiffs.

28

LATHAM&WATKINS                                     COMPLAINT
ATTORNEYS AT LAW
LOS ANGELES                             15

82.  Without the permission or consent of Plaintiffs, and long after Plaintiffs had established valuable goodwill in connection with their training and services identified by Plaintiffs' service mark, AMS commenced to use the mark *Programs to Premium*, in connection with its competing business and services in the insurance industry.

83.  The name *Programs to Premium* used by AMS is a colorable imitation and confusingly similar to Plaintiffs' mark *Programs 2 Premium*.

84.  In selecting and using the mark *Programs to Premium* as a service mark, AMS is acting intentionally and with the purpose of taking the benefit of the favorable reputation and valuable goodwill which Plaintiffs have established in their service mark, and causing the services and business of AMS to be palmed off as made, authorized, sponsored by, endorsed by or otherwise connected with Plaintiffs.

85.  AMS' activities complained of herein are likely to cause dilution of Plaintiffs' mark *Programs 2 Premium*. AMS' activities also are likely to cause confusion, to cause mistake and to deceive members of the insurance industry community in California as to the source, nature and quality of the program and services marketed by AMS.

86.  Plaintiffs are informed and believe, and on this basis allege, that AMS has intentionally and wrongfully adopted the confusingly similar *Programs to Premium* mark in order to dilute Plaintiffs' *Programs 2 Premium* mark and to take the benefit of the goodwill Plaintiffs have established in their service mark.

87.  AMS' actions constitute a willful violation of California Business and Professions Code § 14247 and California common law. Accordingly, Plaintiffs are entitled to injunctive relief enjoining AMS' use of the mark *Programs To Premiums* (and all similar marks) in California pursuant to California Business and Professions Code § 14247 as well as all remedies set forth in California Business and Professions Code § 14250.

88.  Plaintiffs are informed and believe, and on that basis allege, that AMS' conduct as alleged herein was intentional and malicious. Plaintiffs therefore are entitled to an award of punitive damages against AMS, in an amount sufficient to discourage and deter such conduct in the future and to make an example of AMS.

1

## FOURTH CLAIM FOR RELIEF

2

## DEFAMATION

3      89.    Plaintiffs reallege and incorporate by reference the allegations in

4   paragraphs 1 through 88, as set forth herein.

5      90.    Plaintiffs are informed and believe, and on that basis allege, that AMS

6   published false and disparaging statements orally and in writing concerning Plaintiffs.

7   Specifically, AMS, without justification or privilege, stated or implied to Plaintiffs' actual and

8   potential business relationships that, among other things, Plaintiffs have engaged in highly

9   inappropriate and unethical business activities and that Plaintiffs' P2P Program violates

10   applicable regulations and includes misrepresentations and unethical business practice

11   recommendations.

12      91.    These statements are defamatory *per se* because they are false,

13   unprivileged, and tend to adversely affect Plaintiffs in their trade and business by imputing to

14   Plaintiffs disqualifications, dishonesty, incompetence, and improper and immoral conduct that

15   tend to lessen Plaintiffs' profits.

16      92.    Plaintiffs are informed and believe, and on that basis allege, that AMS

17   knew of the falsity of its statements at the time of publication.

18      93.    Plaintiffs are informed and believe, and on that basis allege, that AMS

19   published these false statements with the intent to cause injury to Plaintiffs' actual and potential

20   business relationships and overall business reputations.  These statements were untrue and were

21   understood by those who heard them in a manner which defamed Plaintiffs.

22      94.    As a direct and proximate result of AMS' wrongful conduct, Plaintiffs

23   have suffered general damages to their reputations in an amount to be determined at trial.  As a

24   further direct and proximate result of AMS' wrongful conduct, Plaintiffs have suffered special

25   damages, in an amount to be determined at trial.

26      95.    Plaintiffs are informed and believe, and on that basis allege, that AMS'

27   conduct as alleged herein was intentional and malicious.  Plaintiffs therefore are entitled to an

28

1    award of punitive damages against AMS, in an amount sufficient to discourage and deter such

2    conduct in the future and to make an example of AMS.

### FIFTH CLAIM FOR RELIEF

### TRADE LIBEL

5    96.    Plaintiffs reallege and incorporate by reference the allegations in

6    paragraphs 1 through 95, as set forth herein.

7    97.    Plaintiffs are informed and believe, and on that basis allege, that AMS

8    published false and disparaging statements concerning Plaintiffs' business and the quality of

9    Plaintiffs' services and training program, as more specifically referred to in paragraphs 31

10   through 34 and 38.  Specifically, AMS, without justification or privilege, stated or implied to

11   Plaintiffs' actual and potential business relations that, among other things, Plaintiffs have

12   engaged in highly inappropriate and unethical business activities and that the P2P Program

13   violates applicable regulations and includes misrepresentations and unethical business practice

14   recommendations.

15   98.    Plaintiffs are informed and believe, and on that basis allege, that AMS

16   knew of the falsity of its statements at the time of publication.

17   99.    Plaintiffs are informed and believe, and on that basis allege, that AMS'

18   publications of false and disparaging statements were made intentionally, with malice or in

19   reckless disregard for the truth, and were intended to and did induce others not to deal with

20   Plaintiffs.

21   100.   AMS' false statements disparaged Plaintiffs' on-going business interests,

22   its business reputation, their reputations within the community and the goodwill they enjoyed

23   with customers, clients and the industry as a whole.

24   101.   As a direct and proximate result of AMS' wrongful conduct, Plaintiffs

25   have suffered actual, pecuniary damages, including irreparable injury to their business

26   reputations and lost business and profits, in an amount to be proven at trial.

27   102.   Plaintiffs are informed and believe, and on that basis allege, that AMS'

28   conduct as alleged herein was intentional and malicious.  Plaintiffs therefore are entitled to an

1   award of punitive damages against AMS, in an amount sufficient to discourage and deter such

2   conduct in the future and to make an example of AMS.

3   **SIXTH CLAIM FOR RELIEF**

4   **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

5           103.    Plaintiffs reallege and incorporate by reference the allegations in

6   paragraphs 1 through 102, as set forth herein.

7           104.    Economic relationships exist between Plaintiffs and producers, agents, and

8   insurance carriers in the insurance industry.  These relationships hold probable future economic

9   benefits or advantages to Plaintiffs.

10          105.    AMS knew of the existence of these economic relationships, and knew or

11  should have known that if it did not act with due care, its actions would interfere with these

12  relationships and cause Plaintiffs to lose, in whole or in part, the probable future economic

13  benefits or advantages of the relationships.

14          106.    By the wrongful conduct alleged herein, AMS intended to, and did in fact,

15  disrupt Plaintiffs' relationships with producers, agents and insurance carriers in the industry.

16  The wrongful conduct, including the false and disparaging statements by AMS regarding

17  Plaintiffs, was designed to interfere with and disrupt the economic relationships between

18  Plaintiffs and producers, agents and insurance carriers.  AMS' wrongful conduct resulted in

19  permanent damage to these relationships.

20          107.    As a direct and proximate result of AMS' wrongful and unjustified

21  actions, Plaintiffs have suffered and will continue to suffer damages, in an amount to be proven

22  at trial.

23          108.    Plaintiffs are informed and belief, and on that basis allege, that in

24  committing the acts alleged herein, AMS is guilty of oppression, fraud or malice within the

25  meaning of California Civil Code § 3294, and that AMS authorized, ratified or performed the

26  acts detailed herein, entitling Plaintiffs to punitive or exemplary damages against AMS sufficient

27  to punish and deter it from engaging in such conduct in the future, in an amount to be ascertained

28  at trial.

# SEVENTH CLAIM FOR RELIEF

## UNFAIR COMPETITION

### (California Bus. & Prof. Code § 17200 and California Common Law)

109.  Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 108, as set forth herein.

110.  California Business and Professions Code § 17200 forbids unfair competition, which is defined as "any unlawful, unfair or fraudulent business act or practice."

111.  AMS' acts have impaired Plaintiffs' goodwill, have created a likelihood of confusion, and have otherwise adversely affected Plaintiffs' business and reputations by use of unlawful, unfair and fraudulent business practices.  AMS' conduct also violates federal statutory law, as set forth herein.  These acts constitute unfair competition and unfair business practices under California Business and Professions Code § 17200 and California common law.

112.  Plaintiffs have suffered injury in fact and have lost money or property as a result of AMS' acts of unfair competition.

113.  By reason of its actions, AMS is required to make restitution to Plaintiffs in a sum to be proven at trial.  Upon information and belief, AMS also has wrongfully profited and has been wrongfully enriched by its acts of unfair competition, and should be required to disgorge any and all ill-gotten profits.

114.  Absent injunctive relief, Plaintiffs have no means by which to control AMS' deceptive and confusing use of Plaintiffs' copyrights and trademark and its continuing false and derogatory statements to individuals in the insurance industry.  Plaintiffs are thus entitled to injunctive relief prohibiting AMS from continuing such acts of unfair competition.  Plaintiffs also are entitled to recover their costs and attorneys' fees.

115.  In performing the conduct described herein, AMS acted despicably and with oppression, fraud or malice, intending to injure Plaintiffs and to advantage themselves wrongfully at Plaintiffs' expense.  By reason thereof, Plaintiffs are entitled to an award of punitive and exemplary damages against AMS sufficient to punish and deter them from engaging in such conduct in the future, in an amount to be ascertained at trial.

1

2

3

**EIGHTH CLAIM FOR RELIEF**

**DECLARATORY RELIEF**

**(Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202)**

4        116.   Plaintiffs reallege and incorporate by reference the allegations in

5  paragraphs 1 through 115, as set forth herein.

6        117.   Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C.

7  §§ 2201 and 2202, this Court may declare the rights or legal relations of any party in any case

8  involving an actual controversy.

9        118.   An actual controversy has arisen and now exists between Plaintiffs and

10  AMS concerning their respective rights, duties and interests regarding the Non-Disclosure

11  Agreement and Plaintiffs' ownership rights in and to the P2P Program, including the Works and

12  all related materials and presentations, as well as Plaintiffs' ownership of its service mark

13  *Programs 2 Premiums*.

14        119.   Plaintiffs therefore request and are entitled to a judicial determination as to

15  the rights and obligations of the parties, and such a judicial determination of these rights and

16  obligations is necessary and appropriate at this time.

17        120.   First, with respect to the Non-Disclosure Agreement, Plaintiffs contend

18  that Paragraph 3 is void and unenforceable under California law and pursuant to California

19  Business and Professions Code § 16600. While labeled as a "Non-Disclosure Agreement,"

20  Paragraph 3 of the agreement is broadly worded and purports to prohibit Lindsey and Young

21  from "directly or indirectly" soliciting or diverting "any agent of AMS for itself or on behalf of a

22  competitor of AMS, or induc[ing] any agent or producer of AMS or its affiliates to discontinue

23  its relationship with AMS" for a period of five years after termination of the agreement.

24  Paragraph 3 further provides that Lindsey and Young are similarly prohibited from "directly or

25  indirectly, solicit[ing] . . . any agent, producer, or person employed by or under contract with

26  AMS or its affiliates to terminate his or her employment, engagement or relationship with

27  AMS." Lindsey and Young are not attorneys and were not advised by legal counsel before

28  signing the Non-Disclosure Agreement.

121.    Plaintiffs are informed and believe, and on that basis allege, that AMS disputes Plaintiffs' position with regard to the Non-Disclosure Agreement, and that AMS claims Paragraph 3 is valid and enforceable under California law.

122.    Thus, Plaintiffs request a judicial determination as follows:  (1) the Non-Disclosure Agreement is governed by California law; (2) Paragraph 3 of the Non-Disclosure Agreement is void and unenforceable under California law; (3) Plaintiffs' operation of Revolution and solicitation of producers, agents and employees currently under contract with AMS may not be enjoined, either by an issuance of an injunction or otherwise; and (4) Plaintiffs' operation of Revolution and solicitation of producers, agents and employees under contract with AMS does not constitute a breach of the Non-Disclosure Agreement, nor does it otherwise violate any legitimate right of AMS.

123.    Second, with respect to the ownership of the P2P Program and the service mark *Programs 2 Premium*, Plaintiffs contend that they are the authors and exclusive owners of all rights to the P2P Program and all related materials, manuals, and presentations, including the Works, and the mark *Programs 2 Premium*.

124.    Plaintiffs are informed and believe, and on that basis allege, that AMS disputes Plaintiffs' positions, and that AMS claims that it created and produced the P2P Program and has a right to own the mark *Programs To Premium*.

125.    Thus, Plaintiffs request a judicial determination as follows:. (1) Plaintiffs are the authors and exclusive owners of all rights to the P2P Program and to the mark *Programs 2 Premium*; (2)  AMS is not entitled to ownership of the mark *Programs To Premium*; and (3) AMS is required to transfer its registration of the *Programs To Premium* mark from the United States Patent and Trademark Office to Plaintiffs.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for the following relief:

1.    That the Court enter a judgment in favor of Plaintiffs and against AMS on all counts alleged herein;

1      2.      That the Court issue a temporary, preliminary and, thereafter, permanent

2   injunction against AMS and its officers, agents, servants, employees, and all others in active

3   concert or participation with them with notice, enjoining and restraining them from the

4   following:

5              (a)      Producing, copying, disseminating, distributing, selling, offering

6   for sale, or making any use whatsoever of the Works and all other P2P Program materials;

7              (b)      Using the *Programs To Premium* mark, or any other mark

8   confusingly similar to the *Programs 2 Premium* mark, in connection with the marketing or sale

9   of AMS' services;

10             (c)      Engaging in any other activity constituting an infringement of:  (i)

11  Plaintiffs' copyright rights to the P2P Program and all related training materials, manuals and

12  presentations, including the Works; (ii) Plaintiffs' rights to the *Programs 2 Premium* mark; and

13  (iii) Plaintiffs' right to use or to exploit the P2P Program in the operation of Revolution's

14  business;

15             (d)      Defaming, disparaging or making false statements concerning

16  Revolution, Lindsey, and Young;

17             (e)      Interfering in Plaintiffs' current and prospective business

18  relationships; and

19             (f)      Taking any action (other than in this Court) to enforce Paragraph 3

20  of the Non-Disclosure Agreement or prevent Plaintiffs from soliciting producers, agents, or

21  employees under contract with AMS or from otherwise lawfully conducting their business;

22      3.      That the Court enter a judicial declaration as follows:  (1) the Non-

23  Disclosure Agreement is governed by California law; (2) Paragraph 3 of the Non-Disclosure

24  Agreement is void and unenforceable under California law; (3) Plaintiffs' operation of

25  Revolution and solicitation of producers, agents and employees currently under contract with

26  AMS may not be enjoined, either by an issuance of an injunction or otherwise; and (4) Plaintiffs'

27  operation of Revolution and solicitation of producers, agents and employees under contract with

28

1    AMS does not constitute a breach of the Non-Disclosure Agreement, nor does it otherwise

2    violate any legitimate right of AMS;

3          4.    That the Court enter a judicial declaration as follows:  (1) Plaintiffs are the

4    authors and exclusive owners of all rights to the P2P Program and to the mark *Programs 2*

5    *Premium*; (2)  AMS is not entitled to ownership of the mark *Programs To Premium*; and (3)

6    AMS is required to transfer its registration of the *Programs To Premium* mark from the United

7    States Patent and Trademark Office to Plaintiffs.

8          5.    That the Court order AMS to pay to Plaintiffs compensatory damages,

9    according to proof at trial;

10         6.    That the Court order AMS to pay restitution of their profits from the

11   above-described activities, according to proof at trial;

12         7.    That the Court order AMS to pay punitive and exemplary damages in an

13   amount sufficient to punish and deter AMS from engaging in such conduct in the future,

14   according to proof at trial;

15         8.    That the Court order AMS to pay Plaintiffs' attorneys fees under 17

16   U.S.C. § 505 and 15 U.S.C. § 1117.

17         9.    That the Court order AMS to pay to Plaintiffs both the costs of this action

18   and reasonable attorneys' fees incurred by Plaintiffs in prosecuting this action;

19         10.   For interest at the legal rate; and

20         11.   For such other and further relief as the Court may deem just and proper.

21   Dated:  May 27, 2008                    Respectfully submitted,

22                                           LATHAM & WATKINS LLP
                                                Daniel Scott Schecter
23                                              Kenneth M. Fitzgerald
                                                Wendy P. Harper
24

25
                                             By
26                                              Kenneth M. Fitzgerald
                                                Attorneys for Plaintiffs
27                                              The Revolution FMO LLC, Mark Lindsey,
                                                Ty J. Young
28

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims herein.

Dated: May 27, 2008

Respectfully submitted,

LATHAM & WATKINS LLP
Daniel Scott Schecter
Kenneth M. Fitzgerald
Wendy P. Harper

By _____
Kenneth M. Fitzgerald
Attorneys for Plaintiffs
The Revolution FMO LLC, Mark Lindsey,
Ty J. Young

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| The Revolution FMO LLC; Lindsey, Mark; and Young, Ty J. | Asset Marketing Systems Insurance Services, LLC |

| (b) County of Residence of First Listed Plaintiff **County of Los Angeles** (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant **County of San Diego** (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
|---|---|

| (c) Attorney's (Firm Name, Address, and Telephone Number) Daniel Scott Schecter, LATHAM & WATKINS LLP, 633 West Fifth Street, Suite 4000, Los Angeles, CA 90071; (213) 485-1234 | Attorneys (If Known) **08 CV U929 W AJB** Phillip C. Samouris, HIGGS, FLETCHER & MACK LLP 401 West A Street, Suite 2600, San Diego, CA 92101 |
|---|---|

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☒ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 17 U.S.C. 501; 15 U.S.C. 1125

Brief description of cause: Copyright Infringement, Trademark Infringement, Defamation, Trade Libel, Tortious Interference, Unfair Competiti

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:

JURY DEMAND: ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)  JUDGE _____  DOCKET NUMBER _____

DATE 05/27/2008    SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 151263  AMOUNT 350.  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

5/27/08

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**    Example:    U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 151263    — SR
* * C O P Y * *
May 27, 2008
11:13:02

**Civ Fil Non-Pris**

USAO #.: O8CV0929 CIV. FIL.
Judge..: THOMAS J WHELAN
Amount.:                    $350.00 CK
Check#.: BC#424914

**Total—>    $350.00**

FROM: THE REVOLUTION V. ASSET
      MARKETING SYSTEMS
      CIVIL FILING

AO 121 (6/90)

| TO: | REPORT ON THE |
|---|---|
| **Register of Copyrights**<br>**Copyright Office**<br>**Library of Congress**<br>**Washington, D.C. 20559** | **FILING OR DETERMINATION OF AN**<br>**ACTION OR APPEAL**<br>**REGARDING A COPYRIGHT** |

In compliance with the provisions of 17 U.S.C. 508, you are hereby advised that a court action or appeal has been filed on the following copyright(s):

| ☐ ACTION | ☐ APPEAL | COURT NAME AND LOCATION |
|---|---|---|
| DOCKET NO.<br>08cv929 | DATE FILED<br>5/27/2008 | United States District Court, Southern District of California<br>880 Front Street, Room 4290<br>San Diego, CA  92101-8900 |
| PLAINTIFF<br>The Revolution FMO LLC | | DEFENDANT<br>Asset Marketing Systems Insurance Services, LLC |

| COPYRIGHT<br>REGISTRATION  NO. | TITLE OF WORK | AUTHOR OF WORK |
|---|---|---|
| 1 See attached Complaint | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above-entitled case, the following copyright(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | |
|---|---|---|
| **COPYRIGHT**<br>**REGISTRATION NO.** | **TITLE OF WORK** | **AUTHOR OF WORK** |
| 1 | | |
| 2 | | |
| 3 | | |

In the above-entitled case,a final decision was rendered on the date entered below.  A copy of the order or judgment together with the written opinion, if any, of the court is attached.

| COPY ATTACHED<br>☐ Order    ☐ Judgment | WRITTEN OPINION ATTACHED<br>☐ Yes    ☐ No | DATE RENDERED |
|---|---|---|
| CLERK | (BY) DEPUTY CLERK | DATE |

Copy 1 - Upon initiation of action, mail this copy to Register of Copyrights  Copy 2 - Upon filing of document adding copyrights, mail this copy to Register of Copyrights

Copy 3 - Upon termination of action, mail this copy to Register of Copyrights Copy 4 - In the event of appeal, forward this copy to the Appellate Court so they can prepare a new AO 279 for the appeal

Copy 5 - Case file copy

AO 120 (Rev.3/04)

| TO:                Mail Stop 8<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290  and/or 15 U.S.C. § 1116 you are hereby advised
that a court action has been filed in the U.S. District Court San Diego on the following Patents or Trademarks:

| DOCKET NO.<br><br>08CV929 | DATE FILED<br><br>5/27/2008 | U.S. DISTRICT COURT<br><br>Southern District of California |
|---|---|---|
| PLAINTIFF<br><br>The Revolution FMO LLC | | DEFENDANT<br><br>Asset Marketing Systems Insurance Services, LLC |

| **PATENT OR**<br>**TRADEMARK NO.** | **PATENT OR**<br>**TRADEMARK NO.** | **PATENT OR**<br>**TRADEMARK NO.** |
|---|---|---|
| 1     See attached Complaint | 6 | 11 |
| 2 | 7 | 12 |
| 3 | 8 | 13 |
| 4 | 9 | 14 |
| 5 | 10 | 15 |

In the above-entitled case, the following patent(s)/trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | |
|---|---|---|
| **PATENT OR**<br>**TRADEMARK NO.** | **PATENT OR**<br>**TRADEMARK NO.** | **PATENT OR**<br>**TRADEMARK NO.** |
| 1 | 6 | 11 |
| 2 | 7 | 12 |
| 3 | 8 | 13 |
| 4 | 9 | 14 |
| 5 | 10 | 15 |

In the above-entitled case, the following decision has been rendered or judgment issued:

| DECISION/JUDGMENT |
|---|
|  |

| CLERK<br><br>W. Samuel Hamrick, Jr. | (BY) DEPUTY CLERK | DATE |
|---|---|---|